**MASS COMMUNICATORS, INC.,**
Appellant,

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

Jane A. Roberts, Permittee of Radio Station KCFI, Cedar Falls, Iowa, Intervenor.

No. 14630.

United States Court of Appeals
District of Columbia Circuit.

Argued March 3, 1959.

Decided April 16, 1959.

Mr. Seymour M. Chase, Washington, D. C., for appellant.

Mr. Richard M. Zwolinski, Counsel, Federal Communications Commission, with whom Messrs. John L. Fitzgerald, Gen. Counsel, Federal Communications Commission, and Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission at the time the brief was filed, were on the brief, for appellee. Mr. Mark E. Fields, Counsel, Federal Communications Commission, also entered an appearance for appellee.

Mr. Harry J. Daly, Washington, D. C., with whom Mrs. Lenore G. Ehrig, Washington, D. C., was on the brief, for intervenor.

Before WILBUR K. MILLER, WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

The issue in the present case is whether the Federal Communications Commission is required under the doctrine of Ashbacker Radio Corp. v. Federal Communications Commission, 1945, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108, to hold a comparative hearing as between the applications made to it by appellant on the one hand and the intervenor (Mrs. Jane A. Roberts) on the other. The facts may be briefly stated.

On March 20, 1957, the Commission granted the application of Mrs. Roberts for a construction permit for a new standard broadcast station at Cedar Falls, Iowa. The permit specified November 20, 1957, as the date for the completion of construction. By the specified date, Mrs. Roberts had not completed the construction, nor had she filed an application on Form 701 for additional time to complete construction. See Communi-

cations Act of 1934, § 319(b), 48 Stat. 1089, as amended, 47 U.S.C.A. § 319(b); 47 C.F.R. § 1.323(a) (1958). Accordingly, the permit expired by its terms on November 20, 1957. Twenty-three days later, on December 13, 1957, the appellant, Mass Communicators, Inc., filed an application on Form 301 for a construction permit for a new standard station, proposing the same facilities. See Communications Act of 1934, §§ 308–09, 48 Stat. 1084–85, as amended, 47 U.S.C.A. §§ 308–09; 47 C.F.R. § 1.322(a)(1) (1958). Ten days thereafter, on December 23, 1957, Mrs. Roberts filed an application on Form 321 for a construction permit to replace the expired permit. See Section 319(b) of the Act; 47 C.F.R. § 1.323(b) (1958).

The Commission found that although Mrs. Roberts had not been prevented from completing construction by causes outside of her control, she nevertheless had displayed a degree of due diligence in carrying on the construction, and that in fact the work had been substantially completed by November 20, 1957. The Commission therefore granted her Form 321 application and, without hearing, returned the appellant's Form 301 application, stating in essence that it had exercised its discretion to replace Mrs. Roberts' expired construction permit, even though she had filed her Form 321 application more than thirty days after the expiration date. See ibid.

The appellant thereupon filed with the Commission a petition for reconsideration of its actions, again tendering its Form 301 application. In the petition, the appellant averred that, according to the terms of Section 319(b) of the Act, there had been an automatic forfeiture of the intervenor's construction permit on the date of its expiration, and that therefore the Commission had before it two conflicting and mutually exclusive applications, one pursuant to Sections 308–09, and the other pursuant to Section 319(b) of the Act. Appellant took the position that the Commission was obliged under the Ashbacker doctrine to hold a comparative hearing on the two applications. The Commission denied the petition for reconsideration and returned the appellant's application. This appeal followed.

██ Section 319(b) of the Communications Act provides: /

"(b) Such permit for construction shall show specifically the earliest and latest dates between which the actual operation of such station is expected to begin, and shall provide that said permit will be automatically forfeited if the station is not ready for operation within the time specified or within such further time as the Commission may allow, unless prevented by causes not under the control of the grantee."

The permit is thus required to provide for automatic forfeiture "if the station is not ready for operation within the time specified," subject, however, to two important avenues by which forfeiture may be avoided. If the Commission finds that the construction of the station facilities had not been completed by the specified time because of "causes not under the control of the grantee," the Commission cannot declare an automatic forfeiture of the permit. Cf. Richmond Development Corporation v. Federal Radio Commission, 1929, 59 App.D.C. 113, 35 F.2d 883 (holding under Section 21 of the Radio Act of 1927, ch. 169, 44 Stat., pt. 2, at page 1171, the counterpart of present Section 319(b)). If, on the other hand, the causes for delay of construction are within the control of the grantee, the Commission is given the power to exercise its discretion and allow further time for construction. An automatic forfeiture of the permit then occurs only "if the station is not ready for operation * * * within such further time as the Commission may allow * * *."

While over the years the Commission has established varying procedures for the consideration of requests for granting further time for construction, its course of decision seems to us to have been consistent with the statutory plan.

Prior to 1947, the Commission's regulations only provided for a Form 701 application for the extension of time within which a station could be constructed. FCC Rules and Regulations § 3.215(b), 10 Fed.Reg. 2006 (1945) [now 47 C.F.R. § 1.323(a) (1958)]. Under the regulation, the application had to be filed "at least 30 days prior to the expiration date of [the construction] permit." Applications were also accepted if filed within less than thirty days prior to the expiration date upon a showing satisfactory to the Commission of sufficient reasons for late filing. In both circumstances, the Commission granted the extension "upon a specific and detailed showing that the failure to complete was due to causes not under the control of the grantee, or upon a specific and detailed showing of other matters sufficient to justify the extension."

In 1947, the problem arose as to what discretionary power the Commission had when a Form 701 application was filed after the expiration date of the original construction permit. The Commission held that even in this situation no automatic forfeiture takes place unless and until the Commission refuses to exercise its discretion to allow additional time for construction. Bremer Broadcasting Corp., 3 Pike & Fischer R.R. 1579 (1947) (hereinafter cited as R.R.). As the Commission stated:

> "Clearly, the statute confers on the Commission the discretionary power to allow additional time for construction. Moreover, the statute contains no requirement that this power be exercised by the Commission only upon application filed prior to the completion date specified in the permit." Id. at 1582.

The Commission thus made plain its view that although the regulations specified that applications for renewal be filed either thirty days prior to the expiration date or at least within the thirty-day period prior to the expiration date, such specification did not exhaust the statutory grant of power in Section 319(b) of the Act.

Ten days after the Bremer decision, the Commission promulgated a new regulation concerning expired construction permits. Once a permit had expired, the applicant was now required to make an application on FCC Form 321 for a new construction permit to replace the expired permit. Rules and Regulations § 1.314(c), 12 Fed.Reg. 7080 (1947) [now 47 C.F.R. § 1.323(b) (1958)]. The new procedure would now make impossible a filing on Form 701 after the original permit had expired, as was done in Bremer, but clearly the new regulation was not intended to change or renounce the statutory power of the Commission in exercising its discretion. As was stated in Christian County Broadcasting Co., 6 R.R. 849, 850 n. 2 (1950):

> "The fact that the request of Christian County * * * was filed on Form 321, 'Application for Construction Permit to Replace Expired Permit,' whereas in the Bremer case the request was made on Form 701, 'Application for Additional Time to Construct Radio Station,' is immaterial, since both seek additional time in which to complete construction." Accord, WAAB, Inc., 13 R.R. 461 (1956).

Thus, the new regulation presumably was to make explicit what the statute itself already allowed. It is clear then that an expiration of a permit was by no means to be considered an automatic forfeiture of the permit. Only if the Commission did not exercise its discretion in extending the time within which the facilities were to be constructed, either by an actual extension under Section 1.314(b) of the regulations (Form 701), or by a grant of a new permit to replace the expired permit under Section 1.314(c) (Form 321), was there to be an automatic forfeiture.

■■ Since no automatic forfeiture occurs unless and until the Commission has exercised its discretion, the Ashbacker doctrine has never been applied to a Section 319(b) application. Thus a Form 301 application for a construction permit has never been allowed a com-

parative hearing with a Form 701 application for an extension of time to complete construction when the Form 701 application was filed prior to the expiration date of the old permit. See, e.g., United Detroit Theatres Corp. v. Federal Communications Commission, 1949, 85 U.S.App.D.C. 239, 178 F.2d 700; New England Theatres, Inc., 4 R.R. 1194 (1949); Lacy-Potter Television Broadcasting Co., 4 R.R. 893 (1948); Don Lee Broadcasting System, 4 R.R. 100 (1948). Similarly no comparative hearing has been allowed when the Form 701 application was filed after the expiration date of the original permit. See Bremer Broadcasting Corp., supra. Nor has a comparative hearing been allowed when a Form 321 application was filed for a replacement permit. See WAAB, Inc., supra; Christian County Broadcasting Co., supra. Presumably the rationale behind all these decisions is that the two applications presented cannot be considered to be "mutually exclusive" applications for "an available frequency," see Ashbacker Radio Corp. v. Federal Communications Commission, supra, 326 U.S. at page 333, 66 S.Ct. at page 151, for the frequencies in effect are not "available" in the Ashbacker sense; nor can they become "available" until there occurs an actual forfeiture, either by an abandonment of the permit by the original permittee or by an adverse—and valid—administrative action by the Federal Communications Commission.

■ In the present case, there is an added difficulty. The regulation now in force requires that a Form 321 application be filed "within 30 days of the expiration date of the authorization sought to be replaced." 47 C.F.R. § 1.323(b) (1958). The intervenor in the case at bar filed her Form 321 application thirty-three days after the expiration of the original permit. Nevertheless, the Commission satisfied itself that there had been sufficient extenuating circumstances so as to allow it to grant additional time. Its action here is comparable to the Commission's action in the Bremer case in which a Form 701 application was allowed to be filed after the expiration date. Here, as there, the regulations require that the discretionary power of the Commission be exercised upon the application filed only prior to the date or time period specified. But the regulations cannot be read to limit the statutory grant of power under Section 319(b). One of the major purposes of the section is to allow the Commission to exercise its discretion before an automatic forfeiture takes place. Under the circumstances of the present case, where the Commission's discretion has been exercised to prevent a forfeiture, there can be no basis for applying the Ashbacker doctrine.

■ Appellant also contends that because it raised questions as to the intervenor's fitness to operate the station, the Commission should have considered and resolved those questions in a hearing prior to the granting of intervenor's application for a construction permit on Form 321. Instead, the Commission granted the latter application and postponed the questions raised concerning intervenor's fitness until the holding of a hearing—which the Commission ordered —on intervenor's application for license to operate. We do not think this exceeded the Commission's powers, or abused its discretion. Compare Section 319(c) with Section 319(b); see also Section 312. We do not reach the other contentions of the parties.

The orders of the Commission will accordingly be

Affirmed.

WILBUR K. MILLER, Circuit Judge, dissents.